# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **MOSTAFA ARAM AZADPOUR,** | : | |
| Plaintiff, | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| **AMCS GROUP, INC.,** and | : | |
| **DOES (1)-(50),** | : | No. 19-1968 |
| Defendants. | : | |

**MEMORANDUM**

Schiller, J.  February 5, 2020

Mostafa Aram Azadpour brought this action against AMCS Group, Inc., alleging violations of Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act, the Americans With Disabilities Act, and the Pennsylvania Criminal History Record Information Act (CHRIA) – all stemming from AMCS's recession of his offer of employment. AMCS has moved for dismissal. The Court will grant AMCS's motion because Azadpour's Title VII, ADEA, and ADA claims are untimely, and he has not pleaded sufficient facts to make out a claim under CHRIA.

**I.  BACKGROUND**

The following background information is derived from Azadpour's First Amended Complaint, (First Am. Compl. ["FAC"], Oct. 25, 2019, ECF No. 37), as well as the attachments to AMCS's answer to Azadpour's original complaint, (Def.'s Answer to Pl.'s Compl. ["Def.'s Answer"], June 24, 2019, ECF No. 8), and the attachments to Azadpour's motion for stay, (Mot. For Leave to Obtain Right to Sue Letter ["Mot. For Leave"], Aug. 25, 2019, ECF No. 20), both of which Azadpour incorporates into his First Amended Complaint.

On or about January 30, 2018 Azadpour, who lives in Texas, engaged in a remote job-interview process with AMCS. (FAC ¶ 15.) The process involved phone calls, e-mails, and one video conference between Azadpour and AMCS employees working in Pennsylvania, Massachusetts, and Ireland. (*Id*.) This process culminated in an offer of employment, and around May 1, 2018 Azadpour signed an agreement to become a Vehicle Technology Consultant for AMCS. (*Id*. ¶ 16; Def.'s Answer, Ex. A.)

Azadpour alleges that, after he signed the agreement, an AMCS employee "did an online search using [his] name" and, through the search, learned three pieces of information that contributed to its decision to rescind the offer of employment. First, Azadpour alleges that the search revealed the existence of a lawsuit Azadpour filed against a previous employer in which he alleged the employer failed "to enter into a good-faith interactive discussion for accommodation of my mental disability (depression) and physical disability (foot operation) . . . [and] that I had been laid off for being close to the age of 40 . . . and that former employer was offering a payment in exchange for release from age discrimination liability." (FAC ¶ 28.) Second, Azadpour alleges that the search revealed the existence of a second lawsuit, wherein Azadpour accused an employer of discrimination on the basis of his sex and nation of origin. (*Id*. ¶ 31.) Third, Azadpour alleged that that the search revealed that he "had a misdemeanor criminal record in Tarrant County in the State of Texas with its root in 2009", noting that a "simple putting of my name in a publicly available Internet search engine, such as Google, Bing, or Ecosia, would reveal my criminal history as a matter of public record[.]" (*Id*. ¶ 54.) According to Azadpour, these findings led AMCS to rescind its offer.

On May 5, 2018, Charles Miller, AMCS's Director of Project Management and Azadpour's would-be supervisor, emailed Azadpour, saying "[u]nfortunately after our background check that is part of our process was completed I was informed I cannot follow through or proceed with the offer. This was a surprise and very disappointing." (*Id*. ¶ 20.) Attached to Miller's email was a letter on AMCS's letterhead, also from Miller, which read "[p]lease note that after further consideration, AMCS Group, Inc. is rescinding its offer of employment to you and/or terminating any such employment effective immediately." (*Id*. ¶ 21.)

Azadpour responded to Miller by email that same day, stating "thanks for the follow up. I would like to obtain a copy of this background check" and providing Miller his contact information. (Mot. For Leave, Ex. PPX-002, at 15.) Miller forwarded Azadpour's email to Noreen Cantillon, AMCS's Global Head of Human Resources. On May 8, Cantillon responded to Miller, saying

> Please do not engage in any further communication with Aram at this point – you will recall my last email on Friday with the draft letter requested [REDACTED]. As you know we didn't actually do a background check – it was a google search that revealed the items of concern, I have been in contact with Legal Counsel regarding [REDACTED].

(*Id*.) On or about May 14, 2018 Miller emailed Azadpour, stating "[i]n my prior email I mistakenly referenced a formal 'background check', I have been advised that a background check was not performed, and accordingly, there are no copies to provide." (FAC ¶ 52.)

Azadpour filed a Complaint on May 6, 2019, alleging that AMCS violated CHRIA by rescinding the offer of employment following impermissible consideration of his criminal record. (Compl. ¶ 23.) AMCS filed its Answer, which included attachments, on June 24, 2019. The parties conducted a settlement conference on August. 7, 2019, after which the parties briefly engaged in discovery. On May 25, 2019 Azadpour sought to stay these proceedings so that he could exhaust

3

his administrative remedies for employment discrimination, thereby allowing him to add such claims here. The Court granted the stay, and Azadpour exhausted his administrative remedies and amended his complaint to add Title VII, ADEA, and ADA claims.

Azadpour's First Amended Complaint contains four counts. In Count I, he accuses AMCS of retaliating against him for his two previous attempts to vindicate his Title VII, ADA, and AEDA rights, thus violating Title VII. In Counts II and III, Azadpour accuses AMCS of violating the ADEA and ADA respectively, arguing that AMCS rescinded his offer of employment after learning of his age and disability status from information gleaned in the bing-search regarding his lawsuits against previous employers. In Count IV he accuses AMCS of violating CHRIA, arguing that by searching his name, AMCS learned his criminal history and impermissibly rescinded the offer of employment on that basis.

## II.    STANDARD OF REVIEW

In deciding a motion to dismiss for failure to state a claim, pursuant to Federal Rules of Civil Procedure 12(b)(6), the court must accept as true all factual allegations in the complaint, construe the complaint in the light most favorable to the plaintiff, and determine if there is a reasonable reading of the complaint under which the plaintiff is entitled to relief. *United States ex rel. Bergman v. Abbot Labs.*, 995 F. Supp. 2d. 357, 364 (E.D. Pa. 2014). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). The plausibility requirement "asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft, 556 U.S. at 678.

In assessing a motion to dismiss pursuant to Rule 12(b)(6) "courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint and matters of public

record." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

## III. DISCUSSION

### A. Count I (Title VII), Count II (ADEA), and Count III (ADA)

Azadpour's claims under Title VII, the ADEA, and ADA must be dismissed as untimely. A complaint can be dismissed on statute of limitations grounds "where the complaint facially shows noncompliance with the limitations period and the affirmative defense clearly appears on the face of the pleading". *Oshiver v. Levin, Fishbein, Sedran & Berman,* 38 F.3d 1380, 1384 n.1 (3d Cir. 1994) (citations omitted). Claims under Title VII, ADEA, and ADA are timely if the aggrieved party files a claim with the EEOC within 300 days of the alleged discriminatory act. 42 U.S.C. § 2000e-5(e)(1) (Title VII); 29 U.S.C. § 626(d)(1)(B) (ADEA); 42 U.S.C. § 12117(a) (adopting enforcement scheme set forth at 42 U.S.C. § 2000e-5 for ADA enforcement). The statute of limitations begins to run when the plaintiff becomes aware of the alleged injury itself, not upon awareness that the injury constitutes a legal wrong. *Oshiver*, 38 F.3d at 1386.

In his First Amended Complaint Azadpour alleges that his employment was rescinded on or around May 5, 2018. He did not file a charge with the EEOC until September 16, 2019 – 499 days after the alleged injury. Thus, he filed his claim after the statute of limitations had run.

To save his claims, Azadpour argues that the statute of limitations should be equitably tolled. "[T]here are three principal, though not exclusive, situations in which equitable tolling may be appropriate: (1) where the defendant has actively misled the plaintiff respecting the plaintiff's cause of action; (2) where the plaintiff in some extraordinary way has been prevented from asserting his or her rights; or (3) where the plaintiff has timely asserted his or her rights mistakenly in the wrong forum." *Oshiver*, 38 F.3d at 1387. At the motion to dismiss stage all that is required

of the plaintiff is that they plead the applicability of the doctrine. *In re Cmty. Bank of N. Va.*, 622 F.3d 275, 301 (3d Cir. 2010). Azadpour does not claim to have exercised his rights in the wrong forum, or that AMCS mislead him.[1] Thus, the applicability of equitable tolling turns on whether Azadpour has plead sufficient facts that, when accepted as true, demonstrate that he was prevented from asserting his rights "in some extraordinary way". He has not.

It is axiomatic that, in order to invoke equitable tolling where the plaintiff was neither mislead by the employer nor exercised their rights in the wrong form, the circumstances preventing the employee from filing must be "extraordinary." *See Clarkson v. SEPTA*, 700 F. App'x 111, 114 (3d Cir. 2017). By contrast, where the circumstances that prevented the plaintiff from exercising their rights are common, courts must be wary of invoking the doctrine. *Cf. Robinson v. Dalton*, 107 F.3d 1018, 1023 (3d Cir. 1997) ("[S]hould a plaintiff in Robinson's position be able to circumvent exhaustion requirements by simply asserting s/he was given erroneous telephone advice from an agency employee, equitable tolling would be converted from a remedy available only sparingly and in extraordinary situations into one that can be readily invoked by those who have missed carefully drawn deadlines."). Courts have applied equitable tolling, absent misleading conduct by the defendant or a filing in the wrong forum by the plaintif, where the EEOC unlawfully refused to amend a plaintiff's timely complaint to include allegations of discrimination, *Albano v. Schering–Plough Corp.*, 912 F.2d 384. 388 (9th Cir.1990), and where the plaintiff was unable to

---

[1] At several points in his memorandum opposing AMCS's Motion, Azadpour implies that AMCS was untruthful toward him. (Resp. in Opp'n to Def.'s Rule 12(b)(6) Mot. to Dismiss, at 9-10) ("The inquiry Plaintiff did make [regarding the reason AMCS withdrew its offer] was not, truthfully, responded to" and " the fact pattern . . . clearly points to Defendant attempting to conceal its true reason or reasons for withdrawing an accepted-and-signed employment offer."). However, Azadpour also acknowledges that he "is not in a position to allege fraudulent concealment[.]" He is correct to do so. The complaint does not allege – and the incorporated exhibits do not suggest – that AMCS actively concealed its rationale for withdrawing Azadpour's offer of employment. Allegations that AMCS told Azadpour – incorrectly – that the offer was withdrawn based on the results of a background check are plainly insufficient to trigger equitable tolling because, nine days later, AMCS told Azadpour that no background check had been performed.

timely file because of severe mental disability, *Melendez-Arroyo v. Cutler-Hammer de P.R. Co.*, 273 F.3d 30, 38 (1st Cir. 2001). No such extraordinary circumstances are present here.

Azadpour argues that equitable tolling is warranted because he had no means of learning that AMCS conducted a bing-search of his name, alerting it to his previous lawsuits and misdemeanor conviction, until discovery commenced in this action. (Resp. in Opp'n to Def.'s Rule 12(b)(6) Mot. to Dismiss, at 10-11.) The problem for Azadpour is that his reason for missing the 300-day window for filing the complaint with the EEOC – that he did not know the reason for his employer's action and the employer did not share it with him voluntarily within the span of the statute of limitation – is wholly un-extraordinary. Virtually every plaintiff arguing that their Title VII rights were violated as a result of their termination or failure to be hired will find themselves, like Azadpour, outside the company walls without any way to probe the legality its employer's decision-making process. While the statute of limitation will inevitably prevent some of these plaintiffs from bringing potentially meritorious claims, this was the balance Congress struck between the interests of employment discrimination plaintiffs in pressing their claims and the interests of prospective defendants and the legal system in prompt resolution of such claims. "It is not our prerogative to change the way in which Title VII balances the interests of aggrieved employees against the interest in encouraging the prompt processing of all charges of employment discrimination and the interest in repose." *Ledbetter v. Goodyear Tire & Rubber Co.*, 550 U.S. 618, 642 (2007). Having failed to plead facts sufficient to justify equitable tolling, Azadpour's claims under Title VII, the ADA, and the ADEA are dismissed as untimely.

**B.    Count IV (CHRIA)**

Azadpour's claim under CHRIA must be dismissed because he has failed to plead sufficient facts which, if taken as true, make out a claim under CHRIA. CHRIA dictates that "[w]henever an

employer is in receipt of information which is part of an employment applicant's criminal history record information file . . . [f]elony and misdemeanor convictions may be considered by the employer only to the extent to which they relate to the applicant's suitability for employment in the position for which he has applied." 18 Pa. C.S. § 9125(a). By its terms, CHRIA applies only to employers who are "in receipt" of an applicant's "criminal history record information file". Criminal history record information is "[i]nformation collected by criminal justice agencies concerning individuals, and arising from the initiation of a criminal proceeding, consisting of identifiable descriptions, dates and notations of arrests, indictments, informations or other formal criminal charges and any dispositions arising therefrom." § 9102. By contrast "[i]nformation collected by noncriminal justice agencies . . . shall not be considered criminal history record information." § 9102(e). In other words, an employer is not subject to liability under CHRIA when it learns of an applicant's past criminal history through means other than "criminal history record information."

In his complaint, Azadpour contends that, as a result a bing-search of his name, AMCS learned that he was convicted of a misdemeanor in Texas and impermissibly incorporated that information into its employment decision. (FAC ¶ 54.) Azadpour does not, however, allege any facts sufficient to show that AMCS learned of his criminal history from "information collected by criminal justice agencies" or that the information contained "identifiable descriptions, dates and notations of arrests, indictments, informations or other formal criminal charges." Specifically, while Azadpour alleges that "[a] simple putting of my name in a publicly available Internet search engine such as Google, Bing, or Ecosia, would reveal my criminal history, as a matter of public record", he alleges nothing at all about the source of the information. (*Id.*) This is fatal to his claim, as "CHRIA does not shield an applicant's prior misconduct from an employer's hiring

determination when the employer learns about the misconduct through a means other than the applicant's criminal record information file." *Court v. Loews Phila. Hotel, Inc.*, Civ. A. No. 16-4848, 2017 WL 569522, at *6 (E.D. Pa. Feb. 13, 2017); *see also Foxworth v. Pa. State Police*, 228 F. App'x 151, 155 (3d Cir. 2007). Thus, as Azadpour has failed to plead facts sufficient to show that AMCS made its decision based on his "criminal history record information file", his claim under CHRIA must be dismissed.

## IV. CONCLUSION

For the foregoing reasons, Azadpour's First Amended Complaint is dismissed without prejudice. An Order consistent with this Memorandum will be docketed separately.